JUDGE OWEN

## 07 CV 2652

**CROWELL & MORING LLP**
Jeffrey W. Pagano, Esq. (JP-1408)
Gary A. Stahl, Esq. (GS-3987)
James Maisano (JM-4302)
153 East 53rd Street
New York, New York 10022
(212) 223-4000
Attorneys for Plaintiff Natural Freight Ltd.

MAR 3 0 2007

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- x
                                          :

**NATURAL FREIGHT LTD.,**          :

                         :    **Case No.**

                **Plaintiff,**    :

                         :

        **v.**                    :    **COMPLAINT AND**
                         :    **JURY DEMAND**

**FRACHT FWO INC., FRACHT FWO INC. (GA),**    :
**FRACHT FWO SERVICES INC.,**
**RAINER FISCHER, ARMIN FREY, ANDREAS**    :
**OBERHOLZER, ESPERANZA DELLARO and**
**ALFONS STRUB,**                           :

                         :

              **Defendants.**    :

                         :
------------------------------------------------------------------- x

       Plaintiff Natural Freight Ltd. ("Natural Freight"), by its attorneys, Crowell &

Moring LLP, as and for its Complaint, states and alleges with knowledge as to all facts

concerning itself, and upon information and belief as to all others, as follows:

### I.

### PRELIMINARY STATEMENT

     1.      As a result of its own efforts and investment, Plaintiff Natural Freight Ltd.

("Natural Freight") established a reliable and respected reputation in the competitive business of

arranging for and shipping oceangoing freight. This action arises from Defendants' systematic

and premeditated efforts to misappropriate Natural Freight's proprietary business information

and its customer base -- and to avoid the effort and investment required to compete legitimately

in the freight forwarding business.  Defendants have resorted to a predatory strategy to recruit Natural Freight's employees; to induce them to disclose proprietary business information; to misappropriate Natural Freight's computer-based information; to damage Natural Freight's computer system and its ability to service its customers; and to divert Natural Freight's customers and business by theft, commercial disparagement and trickery.  Defendants' actions also constitute violations of 18 U.S.C. § 1030, *et. seq.* (the "Computer Fraud and Abuse Act"). Plaintiff Natural Freight seeks monetary damages and injunctive relief.

## II.

## PARTIES AND JURISDICTION

### A.    The Parties

2.     At all times relevant to this action, Plaintiff Natural Freight Ltd., ("Natural Freight") is a corporation organized and existing under the laws of the State of New York with its principal place of business located in the County and State of New York.

3.     Defendant Fracht FWO Inc. is a corporation organized and existing under the laws of the State of New York with its principal place of business in the County and State of New York.

4.     Defendant, Fracht FWO Inc. (GA) is a corporation organized and existing under the laws of the State of New York with its principal place of business in the County and State of New York.

5.     Defendant Fracht FWO Services Inc. is a corporation organized and existing under the laws of the State of New York with its principal place of business in the County and State of New York.  Defendants Fracht FWO Inc., Fracht FWO Inc. (GA), Fracht FWO Services Inc. are collectively referred to as "Fracht USA."

6.     Defendant Rainer Fischer is a resident of the State of New Jersey.  Fischer is a former officer of Natural Freight and is currently employed by Fracht USA in New York, New York.

2

7.    Defendant Armin Frey is a resident of the State of New Jersey.  Frey is a former officer of Natural Freight and is currently employed by Fracht USA in New York, New York.

8.    Defendant Andreas Oberholzer is a resident of the State of New Jersey. Oberholzer is a former officer of Natural Freight and is currently employed by Fracht USA in New York, New York.

9.    Defendant Esperanza Dellaro is a resident of the State of New Jersey. Dellaro is a former employee of Natural Freight and is currently employed by Fracht USA in New York, New York.

10.    Defendant Alfons Strub is a resident of the State of New Jersey.  Strub is a former employee of Natural Freight and is currently employed by Fracht USA in New York, New York.

**B.    Jurisdiction and Venue**

11.    This is an action arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*. and under the common law of the State of New York.  This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331.  In addition, the Court has supplemental jurisdiction over Plaintiff's state and common-law claims pursuant to 28 U.S.C. § 1367.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), on the grounds that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

### III.

### FACTS APPLICABLE TO ALL COUNTS

**The Business of Natural Freight**

13.    At all times relevant to this action, Natural Freight has been engaged in the business of booking and arranging for oceangoing freight for its customers, which are located

both in the United States and abroad.  Natural Freight has operated in the United States since 1976.

14.     Natural Freight is the American subsidiary of Cronat Transport Holding AG, a freight forwarding company based in Switzerland.  Cronat is engaged in freight forwarding and logistics services in Switzerland and in other European markets.

**The Business of Defendant Fracht USA**

15.     Defendants Fracht FWO Inc., Fracht FWO Inc. (GA) and Fracht FWO Services Inc. (collectively referred to as "Fracht USA") are freight forwarding companies. Fracht USA concentrates its business in the area of oceangoing freight.

16.     Fracht USA has operated in the United States since the mid-1970s.  Fracht USA is owned and controlled by Fracht AG, which is a Swiss-based worldwide logistics company.  Fracht USA competes directly with Natural Freight.

**Natural Freight Develops and Protects Its Confidential Business Information**

17.     The international freight industry is competitive, particularly in light of increased commercial globalization.  Information pertaining to Natural Freight's internal business operations, customers, marketing, routing, and the terms of its agreements with shippers and vendors is confidential and proprietary.  Set forth below is a list that includes some, but not all, of the confidential and proprietary information and trade secrets ("Confidential Information") that Natural Freight seeks to protect:

- Natural Freight's customer list;

- Natural Freight's marketing strategies;

- the shipping patterns and preferences of Natural Freight's customers and the identities of Natural Freight's customer contacts;

- the pricing and cost structures that Natural Freight utilizes to provide service to its customers;

- the costs and contract terms that Natural Freight has negotiated with oceangoing freight providers in order to provide service to customers;

4

- the business relationships and contacts that Natural Freight has developed with oceangoing freight providers;

- Natural Freight's internal operating procedures including, but not limited to, corporate organization, sales force organization and employee pay structures.

18.    Natural Freight has devoted considerable resources to develop the Confidential Information described above, and especially confidential information relating to customer contacts, costs and pricing. Natural Freight has also invested considerable resources to train its officers and sales staff to market Natural Freight's services to customers and to develop business relationships on behalf of Natural Freight. As a result of this investment, Natural Freight has developed and increased its goodwill and reputation in the oceangoing freight industry.

19.    Recognizing the importance of its Confidential Information, Natural Freight took measures to safeguard such information from disclosure to competitors and other third parties. Natural Freight protected its Confidential Information by, among other things, including provisions in its Employee Handbook, which governed the terms and conditions of employment for Natural Freight's employees. In its 2000 Employee Handbook, Natural Freight advised all of its employees as follows:

> CONFIDENTIALITY
>
> As employees, we are to respect the confidences placed in us by our customers. The professional relationships with our customers and vendors demand that there be no disclosure of any information about their business or any relations and/or agreements we have with them. All work conducted on behalf of Natural Freight Ltd. is confidential and any discussion of our business should be confined to our offices.

**Fracht USA Plans to Raid Plaintiff's Business**
**After Natural Freight Ends its Agency Relationship with Skytruck**

20.    Skytruck Air/Sea Transport Inc. ("Skytruck") is also engaged in the freight forwarding business but, as its name suggests, Skytruck's business is in the field of air freight, as

opposed to oceangoing freight. Natural Freight and Skytruck recognized that they served complementary sectors of the freight and cargo business. From early 1999 through November 19, 2006, Natural Freight and Skytruck expressly authorized each other to act as an agent for the other in booking air freight and oceangoing freight shipments, as the case may be.

21.    In or about October 2006, Natural Freight and Skytruck agreed to cease doing business with each other. Defendant Fracht USA, which operates in the same oceangoing freight business as Plaintiff, learned of the termination of the relationship between Natural Freight and Skytruck, and then began a course of wrongful conduct to misappropriate Natural Freight's Confidential Information, Natural Freight's customers and Natural Freight's business.

**Fracht USA and the Individual Defendants Conspire
To Damage Natural Freight's Business and Steal Its Customers**

22.    Defendant Fracht USA is the American subsidiary of Fracht AG, a Europe-based oceangoing freight forwarding company. Fracht USA has operated in the United States for approximately 30 years, but has not served more than a minor fraction of the American oceangoing freight market. In 2006, Fracht USA was interested in expanding its business in the United States in order to take advantage of the growing international freight and logistics market.

23.    Upon information and belief, in or about late 2006, Fracht USA devised a plan to raid Natural Freight's business and its customers, and to take over most of Natural Freight's operations in the United States. This plan required the cooperation of the Individual Defendants.

24.    In or about October 2006, as Skytruck and Natural Freight were terminating their business relationship, Fracht USA induced the Individual Defendants, as well as other officers and employees of Natural Freight, to resign from their employment with Natural Freight. Fracht USA advised the Individual Defendants that Fracht USA would welcome them -- and all of the Confidential Information, business and customers that the Individual Defendants could take from Natural Freight. In connection with its efforts to induce the Individual Defendants and other Natural Freight employees to leave Natural Freight and divert business and

business opportunities, Fracht USA offered to employ the Individual Defendants and other Natural Freight employees.

25.     The Individual Defendants, all of whom were officers and/or employees of Natural Freight, had access to and were in possession of Natural Freight's Confidential Information.  This Confidential Information included, among other things, Natural Freight's customer list; its cost information and profit margins; its knowledge of customer contacts, customer decision-makers and customer shipping patterns and preferences; knowledge of which oceangoing shippers are the most reliable and cost-effective; the manner in which Natural Freight tracks orders and the progress of its freight shipments; and other confidential information that Natural Freight developed in order to generate goodwill and remain competitive.  In addition, for several years, the Individual Defendants developed and maintained important customer relationships on behalf of Natural Freight.  In dealing with customers, the Individual Defendants "personified" Natural Freight; at all times, however, the customer relationships that the Individual Defendants maintained were a valued corporate asset of Natural Freight.

26.     In or about October 2006, Defendant Fischer, who headed Natural Freight's New York Office, gave notice that he would resign from employment with Natural Freight.  While still in Natural Freight's employ, Fischer visited several Natural Freight customers and induced them to discontinue using Natural Freight's services after he and the other Individual Defendants left Natural Freight.  Fischer began employment for Fracht USA in or about late 2006 or January 2007.

27.     Defendant Dellaro left Natural Freight's employ in or about November 2006, and began working for Fracht USA.  With the knowledge and approval of the other Individual Defendants and Fracht USA, Dellaro immediately began misusing Natural Freight's Confidential Information, and misusing the customer relationships that she developed on behalf of Natural Freight in order to induce Natural Freight's customers to cease doing business with Plaintiff.  In addition, with the knowledge and approval of the other Individual Defendants and Fracht USA, Dellaro contacted the freight agents that Natural Freight engaged in South America

to represent Plaintiff and to handle customer shipping orders. Dellaro and the Individual Defendants, with Fracht USA's knowledge and approval, induced the freight agents to discontinue doing business with Natural Freight, to conduct their business with Fracht USA instead, and to steer Natural Freight customers and prospective customers to Fracht USA.

28.     In or about early December 2006, the Defendants Oberholzer, Frey and Strub, who were officers and/or employees of Natural Freight in New York, gave notice to Natural Freight that they would resign from employment at the end of the year. At or about the same time, they agreed to become officers or employees of Fracht USA. While still in Natural Freight's employ, Oberholzer and Frey searched for office space in Manhattan on behalf of Fracht USA; contacted Natural Freight's customers to induce them to discontinue their business with Natural Freight; and attempted to recruit additional Natural Freight employees on behalf of Fracht USA. Defendants Fischer, Frey, Oberholzer and Dellaro are currently employed as officers and/or employees of Fracht USA at its corporate offices in Manhattan.

29.     In or about early 2007, Fracht USA and Skytruck agreed to act as freight forwarding agents for each other, with Fracht USA effectively replacing Natural Freight. In connection with this arrangement, Fracht USA began to occupy the same offices as Skytruck in Atlanta. In Chicago, Fracht USA began to occupy the suite adjoining Skytruck's premises in the same office building. The objective of this arrangement is to guide airfreight business to Skytruck and oceangoing freight business to Fracht USA. For Fracht USA, an added element of this arrangement was its misappropriation of Natural Freight's business – and its customer relationships – with the participation of the Individual Defendants.

**Fracht USA and the Individual Defendants**
**Damage Natural Freight's Business in New York**

30.     In or about December 2006, Oberholzer, Frey and Strub, with the knowledge and approval of Fracht USA and Fischer, engaged in the following wrongful conduct:

    (a)     Oberholzer and Frey emptied the central computer at Natural Freight's New York office of information, programs and operating systems. By

purging programs and information, including Confidential Information, from Natural Freight's central computer, Oberholzer and Frey rendered it impossible for Plaintiff to examine or recover its communications with customers or prospective customers.

(b)    Oberholzer and Frey disabled other computers in Natural Freight's New York City headquarters.  This impaired, among other things, Natural Freight's ability to communicate with customers, to book freight shipments and to provide customers with information concerning current shipments, pricing and future shipments.

(c)    After providing notice of their resignation, Oberholzer, Frey and Strub misappropriated computer-based information and other Confidential Information from Natural Freight's New York City office including, but not limited to, customer lists and customer-related files; information concerning Natural Freight's costs and pricing; information relating to Natural Freight's business plans and strategies; and other proprietary business information.

(d)    Oberholzer and Frey, using Natural Freight's funds, made an early payment with respect to Natural Freight's warehouse contract for the storage of Plaintiff's corporate files.  Oberholzer and Frey directed the warehouse to transfer Natural Freight's files to a new location under the control of the Individual Defendants, Skytruck and Fracht USA.

(e)    In or about December 2006, Oberholzer and Frey, using Natural Freight's funds, established a "CRMS" sea freight booking system with an on-line service provider.  Oberholzer and Frey set up personal user codes and passwords.  The Individual Defendants, some of whom were officers of Natural Freight, did not advise Natural Freight's management that the CRMS booking system was operational, or that they had established their

9

own user names and passwords.  In early 2007, after leaving Natural Freight's employ, the Individual Defendants continued to access and utilize the CRMS booking system with their personal user names and exclusive passwords -- but on behalf of Fracht USA.  In this manner, Fracht USA and the Individual Defendants were able to book shipments on behalf of Fracht USA, and they wrongfully monitored the business that Plaintiff was conducting.

31.    By early January 2007, all of the Individual Defendants, with the exception of Alfons Strub, began employment with Fracht USA in New York City.  With the knowledge and approval of Fracht USA, the Individual Defendants continued to use Confidential Information that they misappropriated from Plaintiff.  Upon information and belief, the Individual Defendants and Fracht USA shared and utilized the Confidential Information that the Individual Defendants misappropriated in order to transfer the business relationships that Natural Freight developed to Fracht USA, and to compete unfairly with Natural Freight.

32.    After beginning employment at Fracht USA, Defendants Fischer, Frey, Oberholzer and Dellaro, with Fracht USA's knowledge and approval, systematically contacted the same customers whose accounts they formerly serviced during their employment with Natural Freight.  Making wrongful use of:  (a) the goodwill and the relationships that they had developed on behalf of Natural Freight; and (b) Natural Freight's Confidential Information, the Individual Defendants solicited Natural Freight customers and freight servicing agents on behalf of Fracht USA.  With Fracht USA's knowledge and approval, the Individual Defendants or others acting in concert with them deliberately advised Natural Freight customers that Natural Freight had ceased conducting business, or that Natural Freight had "become" Fracht USA.

33.    In or about October 2006, Defendant Strub advised Natural Freight that he was retiring from the freight business.  In the meantime, Strub made plans to begin consulting for Fracht USA.  In or about February 2007, believing that Strub was in retirement, Natural Freight requested Strub's assistance in making a presentation to a prospective customer.  Strub agreed to

do so, intentionally failed to advise Natural Freight about his upcoming employment with Fracht USA, and then introduced himself to the prospective customer with Natural Freight's sales representative.   Shortly thereafter, Strub began work as a consultant for Fracht USA in New York City, and solicited the same customer, and other Natural Freight customers, on behalf of Fracht USA.

### Fracht USA and the Individual Defendants
### Damage Natural Freight's Business in Chicago and Atlanta

34.    In or about December 2006, several officers and sales representatives in Natural Freight's Chicago office gave notice that they would leave Natural Freight's employ at the end of the year.  At or about the time that they provided such notice, these individuals had already obtained employment, or offers of employment, from Fracht USA.

35.    In Chicago, Fracht USA induced several of Natural Freight's officers and employees to divert business by misappropriating Plaintiff's telephone number.   In or about December 2006, several Natural Freight officers and sales representatives -- who had resigned but who had not yet left Natural Freight's employ -- instructed Natural Freight's telephone service provider to transfer Natural Freight's telephone number to a location where Fracht USA would operate.

36.    As a result, any of Natural Freight USA's customers who placed a call to Natural Freight's diverted telephone number were connected instead to a location chosen by Fracht USA.  In some circumstances, Natural Freight's customers were told by or on behalf of Fracht USA that Natural Freight was no longer in business.

37.    In Natural Freight's Atlanta office, various officers and employees provided notice to Natural Freight in or about early December 2006 that they would leave their employment by the end of the year.  These resignations were coordinated to coincide with those in Natural Freight's Chicago and New York offices.

38.    Prior to their last day of employment with Natural Freight -- and with the knowledge and approval of Fracht USA -- the officers and employees in Natural Freight's

Chicago and Atlanta offices misappropriated Natural Freight's Confidential Information.   The ex-officers and ex-employees from Natural Freight's Chicago and Atlanta offices have shared the misappropriated Confidential Information with Fracht USA, which is currently misusing that information to solicit Natural Freight's customers, to misuse Natural Freight's pricing and cost data and to compete unfairly with Natural Freight.   In addition to hiring the Individual Defendants, Fracht USA has hired the officers and sales representatives that Natural Freight formerly employed in its Atlanta and Chicago offices in order to deplete Natural Freight's workforce, to obtain Natural Freight's Confidential Information and to drive Natural Freight out of business.

## IV.

## CLAIMS

### Count 1

### Violation of the Computer Fraud and Abuse Act

39.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 to 38 as though fully set forth herein

40.     Plaintiff's computers and computer systems are utilized in interstate and international commerce, communication and business activities.   Plaintiff's computers are "protected" computers under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

41.     Fracht USA and the Individual Defendants, in their own behalf and as agents for each other, accessed Plaintiff's protected computers without authorization, or exceeded authorized access to Natural Freight's computers.

42.     The Individual Defendants, acting as agents for each other and for Defendant Fracht USA, knowingly caused the transmission of a program, information, code or command to or from Plaintiff's protected computers without authorization, and intentionally caused damage to Plaintiff's protected computers.   Defendants knowingly and recklessly caused damage to Plaintiff and its protected computers.

43.     Defendants' conduct described herein was intentional, reckless, malicious and willful.  Plaintiff has suffered damages and loss under Section (a)(5)(B)(i) of the Computer Fraud and Abuse Act due to Defendants' conduct in harming and improperly accessing Plaintiff's data, programs and computer systems in an amount to be proven at trial, but in an amount well in excess of $5,000 during a 1-year period.

44.     Defendants' actions herein constitute a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Accordingly, Plaintiff is entitled to recovery against the Individual Defendants and Fracht USA, jointly and severally, for all losses, as defined under the Computer Fraud Act, the amount of which is to be determined at trial, but in no event less than $1 million.

## Count 2

### Unfair Competition

45.     Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 44 as though fully set forth herein.

46.     In order to compete unfairly and unlawfully with Plaintiff, defendants, acting as agents for each other, in concert and conspiracy with each other and with knowledge of each other's actions, collaborated on a strategy to damage Plaintiff and its business utilizing unfair trade practices.

47.     In late 2006, Fracht USA and the Individual Defendants devised a scheme to target and recruit Plaintiff's officers and employees, including but not limited to the Individual Defendants, and to induce them to disclose Natural Freight's Confidential Information to Fracht USA.  Defendants intended for Plaintiff's officers and employees to misappropriate Plaintiff's Confidential Information, and then for Fracht USA to use that information to solicit Plaintiff's actual and prospective customers.  The objective of this scheme was to enable Fracht USA to possess Plaintiff's Confidential Information, to divert customers, business and revenues from Plaintiff, to damage Plaintiff and drive Plaintiff out of business.

48.     Defendants' scheme also obviated the need for Fracht USA to invest substantial funds and resources to develop customer relationships and valuable pricing and cost information in the international freight business on its own, and at its own expense.

49.     As a result of Defendants' unlawful, unfair and wrongful conduct, Plaintiff has sustained substantial damage in the loss of customers, business and revenues, and has sustained damage to its goodwill and business reputation.  Plaintiff is entitled to recovery against all Defendants, jointly and severally, in an amount to be determined at trial, but not less than $10 million.

50.     Based on Defendants' intentional, willful, wanton and malicious wrongful conduct, Plaintiff also seeks exemplary damages and attorneys' fees.

### Count 3
### Tortious Interference with Contractual Relations

51.     Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 50 as though fully set forth herein.

52.     Plaintiff entered into arrangements and contracts with its officers and employees precluding them from disclosing Plaintiff's Confidential Information to third parties. These arrangements and contracts precluded the disclosure of all Confidential Information belonging to Plaintiff.

53.     Defendant Fracht USA knew or should have known of the existing and enforceable arrangements, contracts and obligations between Plaintiff and its officers and employees precluding the disclosure of Plaintiff's Confidential Information.   In addition, Defendants knew or should have known of the duty of loyalty that Plaintiff's officers and employees owed to Plaintiff.

54.     Fracht USA acted wrongfully and deliberately to induce the Individual Defendants and other employees and officers of Plaintiff to breach their obligations to preserve Plaintiffs' Confidential Information and their duty of loyalty to Plaintiff, and to improperly

supply Fracht USA with Plaintiff's Confidential Information.   Fracht USA perpetrated this conduct without justification or privilege.

55.     As a result of Defendant's conduct, Plaintiff has lost valuable customer relationships and revenues to Fracht USA.  Plaintiff has suffered and will continue to suffer lost profits, other consequential damage, and harm to its reputation and goodwill.

56.     As a result of Defendant's unlawful, unfair and wrongful conduct, Plaintiff is entitled to recovery against Fracht USA for tortious interference with contract in an amount to be determined at trial, but not less than $10 million.

57.     Based on Defendant's intentional, willful, wanton and malicious wrongful conduct, Plaintiff also seeks exemplary damages and attorneys' fees.

## Count 4
### Tortious Interference with Contractual Relations

58.     Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 57 as though fully set forth herein.

59.     Plaintiff entered into arrangements and contracts with its freight servicing agents in order to represent Plaintiff in various locales, to maintain Plaintiff's relationship with its customers and to develop new business on Plaintiff's behalf.

60.     Fracht USA and the Individual Defendants knew or should have known of the existing and enforceable arrangements, contracts and obligations between Plaintiff and its freight servicing agents.  In addition, Defendants knew or should have known of the customer relationships that the freight servicing agents developed and maintained on Plaintiff's behalf.

61.     Fracht USA and the Individual Defendants collaborated with each other in a deliberate plan to induce Plaintiff's freight servicing agents to cease their contractual arrangements with Plaintiff and to cease conducting business with Plaintiff.  In addition, Fracht USA and the Individual Defendants collaborated with each other by inducing Plaintiff's freight servicing agents to: (a) conduct their business instead with Fracht USA; and (b) to steer

Plaintiff's customers and prospective customers into making oceangoing freight arrangements instead with Fracht USA.

62.     At all relevant times, Fracht USA and the Individual Defendants acted as agents for each other, with knowledge of each others' actions and in concert and conspiracy with each other.   Fracht USA and the Individual Defendants perpetrated this conduct without justification or privilege.

63.     As a result of Defendants' conduct, Plaintiff has lost valuable customer relationships and revenues to Fracht USA.  Plaintiff has suffered and will continue to suffer lost profits, other consequential damage, and harm to its reputation and goodwill.

64.     As a result of Defendants' unlawful, unfair and wrongful conduct, Plaintiff is entitled to recovery against Fracht USA and the Individual Defendants jointly and severally, for tortious interference with contract in an amount to be determined at trial, but not less than $10 million.

65.     Based on Defendants' intentional, willful, wanton and malicious wrongful conduct, Plaintiff also seeks exemplary damages and attorneys' fees.

## Count 5
### Tortious Interference with Prospective Business Relations

66.     Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 65 as though fully set forth herein.

67.     Fracht USA and the Individual Defendants devised a scheme to misappropriate from Plaintiff, utilizing unfair trade practices, that which it could not achieve through lawful means.  Fracht USA and the Individual Defendants devised a scheme to learn the identity of Plaintiff's customers, obtain Plaintiff's Confidential Information, and to use that information to interfere with Plaintiff's relationship with its customers.

68.     Fracht USA targeted and recruited Plaintiff's officers and employees, including but not limited to the Individual Defendants and obtained from them Plaintiff's Confidential Information regarding, inter alia, customer relationships, customer contacts and

customer shipping patterns and preferences. In addition, the Individual Defendants targeted Plaintiff's computer-based Confidential Information concerning pricing, costs and Plaintiff's customer lists. Fracht USA and the Individual Defendants, acting in concert and conspiracy with each other, as agents for each other, and with knowledge of each others' actions, then used Plaintiff's Confidential Information to interfere with Plaintiff's relationships and prospective business with Plaintiff's current and prospective customers.

69. Defendants' scheme was intended to cause damage and has, in fact, caused damage to Plaintiff and interfered with Plaintiff's business relationships with its actual and prospective customers without justifiable cause or privilege.

70. As a result of Defendants' conduct, many of Plaintiff's customers have terminated their relationships with Plaintiff and transferred their business to Fracht USA. Moreover, prospective customers have declined to enter into business relationships with Plaintiff.

71. Plaintiff has suffered and will continue to suffer lost profits, other consequential damage, and harm to its reputation.

72. Accordingly, Plaintiff is entitled to recover damages against Fracht USA and the Individual Defendants, jointly and severally, on grounds of tortious interference with prospective business relationships, in an amount to be determined at trial but in no event less than $10 million.

73. Based on Defendants' intentional, willful, wanton and malicious wrongful conduct, Plaintiff also seeks exemplary damages and attorneys' fees.

## Count 6
### Misappropriation of Trade Secrets

74. Plaintiff repeats and incorporates herein the allegations set forth in paragraphs 1 through 73 as though fully set forth herein.

75. Plaintiff has developed Confidential Information including, but not limited to contracts, customer lists, customer preferences, sales proposals, presentations and pricing

information.  Plaintiff developed its Confidential Information through its own significant efforts and at substantial expense.

76.    Plaintiff's Confidential Information holds independent economic value because it is not generally known and is not readily ascertainable by others who stand to benefit economically if they use or disclose it.

77.    Plaintiff has employed reasonable efforts to maintain the secrecy of its Confidential Information.

78.    Fracht USA, with the knowing collaboration of the Individual Defendants, acquired Plaintiff's Confidential Information through improper means and without Plaintiff's express or implied consent.

79.    As a result of the unlawful misappropriation of Plaintiff's Confidential Information, Plaintiff is entitled to recover compensatory damages, including lost profits, against Fracht USA and the Individual Defendants in an amount to be determined at trial, but in no event less than $10 million.

## Count 7
### Conversion

80.    Plaintiff repeats and incorporates herein the allegations set forth in paragraphs 1 through 81 as though fully set forth herein.

81.    The conduct of Fracht USA and the Individual Defendants described herein constitute common law conversion of property, including valuable intellectual property.

82.    Plaintiff, as a result of its own investment of money and resources, owns certain Confidential Information, including but not limited to trade secrets, which Plaintiff took reasonable measures to keep confidential and which is entitled to trade secret protection.  This information is unique and is a valuable asset of Plaintiff.

83.    Fracht USA and the Individual Defendants have knowingly converted Plaintiff's property to their own use, including Plaintiff's Confidential Information.   At all

relevant times, Defendants acted as agents for each other, in concert and conspiracy with each other, and with knowledge of each others' actions.

84.     Defendants' acts of conversion of Plaintiff's property, including Plaintiff's intellectual property, have caused injury and damages to Plaintiff's business and business reputation. Accordingly, Plaintiff is entitled to recover damages against Fracht USA and the Individual Defendants, jointly and severally, in an amount to be proven at trial, but not less than $10 million. In addition, Plaintiff is entitled to recover punitive damages against Defendants, jointly and severally.

## Count 8
### Breach Of Fiduciary Duty and Misappropriation of Corporate Opportunity

85.     Plaintiff repeats and incorporates herein the allegations set forth in paragraphs 1 through 84 as though fully set forth herein.

86.     As officers and/or employees of Plaintiff, the Individual Defendants at all times had a fiduciary duty to act with loyalty to Plaintiff, and in Plaintiff's best interests.

87.     At all relevant times, and when the Individual Defendants gave notice of their intent to leave Plaintiff's employ, they knew and understood the existence of an opportunity to solicit Plaintiff's customers and prospective customers to transfer the business relationships that Plaintiff had developed to Fracht USA.

88.     The Individual Defendants breached their fiduciary duty and duty of loyalty and diverted Plaintiff's business opportunities by diverting Plaintiff's customer relationships and Confidential Information, including but not limited to customer lists, sales proposals, and pricing information, all misappropriated from Plaintiff's computer files and offices.

89.     As a result of the Individual Defendants' wrongful conduct, Plaintiff has sustained damages in the amount of profits it would have enjoyed but for the Individual Defendants' diversion and misappropriation of said corporate opportunities and Confidential Information.

90.    The Individual Defendants' conduct alleged herein was intentional, reckless, malicious and willful.

91.    The Individual Defendants' conduct constitutes a breach of fiduciary duty and a violation of the corporate opportunity doctrine. Accordingly, Plaintiff is entitled to recover, from the Individual Defendants, jointly and severally, an amount to be proven at trial but in no event less than $10 million. In addition, Plaintiff is entitled to recover punitive damages against the Individual Defendants, jointly and severally.

## Count 9
### Commercial Defamation

92.    Plaintiff repeats and incorporates the allegations set forth in Paragraphs 1 through 91 as though fully set forth herein.

93.    Beginning in late 2006 and continuing to date, the Individual Defendants, with the knowledge and approval of Fracht USA, systematically began contacting and soliciting Plaintiff's customers and freight agents. In the course of these communications, with the direct intent of causing Plaintiff's customers and freight agents to cease doing business with Plaintiff and to transfer their business to Fracht USA, the Individual Defendants, with the knowledge and approval of Fracht USA, wrongfully advised Plaintiff's customers and freight agents that Natural Freight had ceased conducting business and/or that Natural Freight had "become" Fracht USA.

94.    In the course of these communications, the Individual Defendants, with the knowledge and approval of Fracht USA, made factual statements to Plaintiff's customers regarding Plaintiff's business that were false, incorrect and defamatory to Plaintiff's reputation in that Plaintiff was in operation and was ready, willing and able to continue providing its oceangoing freight services to its customers and to continue its oceangoing freight work with its freight agents.

95.    Defendants' defamatory statements regarding Plaintiff impugned the integrity and creditworthiness of Plaintiff's business, and caused many of Plaintiff's customers and freight agents to terminate their business relationships with Plaintiff and transfer their

business to Fracht USA.  Further, based on Defendants' defamatory statements, prospective customers have declined and continue to decline to enter into business relationships with Plaintiff.

96.    Defendants' defamatory statements were the proximate cause of damage to Plaintiff's business reputation and operations, and such statements have done harm to Plaintiffs' reputation in the business community.  Defendants did not have, and continue not to have, any privilege to make such defamatory statements about Plaintiff.

97.    Defendants knew that such defamatory statements about Plaintiff were false, incorrect and untrue, and deliberately intended to cause damage to Plaintiff by making such defamatory statements.  Defendants were negligent, reckless and willful in making said defamatory statements.

98.    Plaintiff has suffered and will continue to suffer direct pecuniary loss, including lost profits and other consequential damages as a result of Defendants' defamatory statements.  Accordingly, Plaintiff is entitled to recover damages against Defendants, jointly and severally, in an amount to be determined at trial, but not less than $10 million.  In addition, Plaintiff is entitled to recover punitive damages against Defendants, jointly and severally.

## V.

## **JURY DEMAND**

99.    Plaintiff hereby demands trial by jury for all claims so triable.

## VI.

## **REQUEST FOR RELIEF**

100.    Natural Freight respectfully requests that this Court enter judgment in Natural Freight's favor, granting the following relief:

(a)    entering judgment in Natural Freight's favor against Defendants, jointly and severally, in an amount to be determined at trial, but in no event less than $10 million;

(b)     awarding exemplary damages in an amount to be determined at trial to deter Defendants and others similarly situated from engaging in such conduct in the future;

(c)     temporarily and permanently enjoining any and all present and future actions by Defendants relating to their intentional, reckless, malicious and willful conduct and actions;

(d)     ordering Defendants to pay interest on the damages from the date judgment is entered, until payment of the judgment is made;

(e)     awarding Natural Freight its reasonable attorneys' fees and court costs; and

(f)     granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 30, 2007

Respectfully submitted,

CROWELL & MORING LLP

By: _____
       Jeffrey W. Pagano, Esq. (JP-1408)
       Gary A. Stahl, Esq. (GS-3987)
       James Maisano, Esq. (JM-4302)
       153 East 53rd Street, 31st floor
       New York, New York 10022
       (212) 223-4000

Attorneys for Plaintiff Natural Freight Ltd.